Van Hoesen, J.
In Baird v. The Mayor (96 N. Y., 577), the court said, “It is undoubtedly the duty of the *569 appellate tribunal, where it is invested with the power of reviewing questions of fact already passed upon by a court of original jurisdiction, to examine the evidence and determine for itself, and the rule forbidding a reversal where there is conflicting evidence, or some evidence, to sustain the finding, does not apply to such a case. But when there is evidence on both sides, and the case is balanced so that the mind of the trial court has been called upon to weigh conflicting statements and inference, and decide upon the credibility of opposing witnesses, much weight must be accorded to the especial adaptation of the trial court to investigate and determine such questions.”
The rule for the decision of appeals in cases like the one now before us is thus stated by Judge Folger in Crane v. Baudouine (55 N. Y., 256). “If it appears that the conclusion of the referee is not against the weight of evidence, that it might well have been either way, or that the testimony is slight on which to found a conclusion contrary to his, then the consideration that he saw the witnesses, and had the assistance of their presence," should lead to a deference to his judgment.
In Westerlo v. De Witt (36 N. Y., 344), Judge Hunt said, “the question is not, should we have found the facts in the same manner ?”
In Sherwood v. Hauser (94 N. Y., 626), the court of appeals reversed the judgment of the general term of the supreme court, which had reversed the judgment entered on the report of a referee, and assigned as a reason for its action that, “It did not appear that the referee decided without evidence,- or the weight of evidence was the other way, and, therefore, the findings of the referee should be sustained.”
Though the court of appeals has steadily enforced the rule that I have cited, there are cases undoubtedly, in which it may be apparent that the trial court has erred in weighing conflicting testimony, and that substantial justice requires that the evidence should again be placed in the balance. Nason v. Luddington (13 Abb. N. C., 401) was such a case, for the court of appeals affirmed the judgment of the general term of this court that reversed the decision of a referee of great experience upon a question of fact, though two witnesses testified in one way to the point on which the case turned and only one witness testified to the contrary.
I have examined the evidence in this case with some care, and if we are to be governed by the rule laid down for us, I cannot see how the judgment can be reversed. I do not that conclusion would have been the same *570 that was reached by the court at special term, but there is abundant evidence to sustain the judgment, if we apply the rule that it is for the defendants to prove that their father, in making his gifts to them—gifts that disposed of all his property—knew what he was doing and understood the effect of his acts. I am not insensible to the fact that the man who wrote the letter to Candler, dated April, 1877, was beyond all question perfectly competent at that time to manage any business that he had to transact. I could not assent to any conclusion that imputed to the father a want of" capacity, or a want of free will, in taking defendants into partnership; but I agree with the judge at the trial term that the letters of January 15, 1878, contain inherent evidence of having been written by the same author, though one of them appears in the handwriting of the father and the other in the handwriting of one of the ■defendants. 1
The effect of these letters was to retire the father from the firm, and to place the business entirely in the hands of the defendants. If either of the defendants wrote a letter giving to him and his brother all the father’s interest in the business, and if the father copied and signed that letter; if the effect of that letter was to make the father forever thereafter a mere pensioner of the sons; if the father were infirm of body and of failing intellect; if no one but the three, the father and the two sons, knew of the transaction, is it unfair' to conclude that the act of the father was the result of the ascendancy that the sons had obtained over his enfeebled will ? I think not. I mention this item of evidence merely for the purpose of illustration, for there are other transactions that required explanation, but which have not been explained to the satisfaction of the trial judge. It is true, that there are circumstances that tend to support the fairness and the validity of the transfers that the court has set aside, but these circumstances only go far enough to make the case one of those balanced, doubtful cases, that the general term ought not to decide in opposition to the judgment of the court, before which the witnesses appeared.
I am, however, in favor of modifying the judgment, by striking therefrom the penultimate paragraph. As the father died pending the trial; as his administrator is not before the court; as the supplementary pleadings refer only to the real estate; as sections 758, 759 and 760 seem to favor in such a case the separation of the issues relating to the real estate from the issues relating to the per sonal property, I think that only so much of the judgment as sets aside the conveyances of the reality should he affirmed, and that the part of the judgment that directs *571 the surrender of documents, by which an interest in the personal property was transferred, should be reversed.
As tire judgment is modified, I think no costs of appeal should be allowed.
ookstaver and Larremore, JJ., concur.