UNITED STATES RUBBER COMPANY, Appellant, *v.* BERNARD
SILVERSTEIN, Respondent.

Guaranty — whether the defendant guaranteed payment of
bills by sons, in business for themselves, question for the
jury — when evidence sufficient to sustain verdict that defend-
ant was liable.

A guaranty to plaintiff in the following form signed by defendant is
the subject of this action: " Enclosed find check for the three above
bills. Please do not send my statements and my son's statements
together. Send him his and me mine. They do business for themself
(*sic*), and therefore send them separate statements, but I am good for
what they buy." The defendant is a merchant. His two sons are
merchants in different localities. A salesman in the plaintiff's service
visited the defendant, who stated that he would be good for any sales
that the plaintiff might make to one of the sons, naming him. The
other son, not then being in business, was not included in the promise.
The plaintiff made sales to the first named, charging them at first to
the defendant. It made sales later to the other son, charging them to
him directly. Later the defendant, dissatisfied with the form of
accounts, wrote the letter already quoted. The plaintiff interpreted
this letter as a guaranty of sales to the son not included in the original
guaranty, and gave credit on that basis. Default in payment followed,
and in turn was followed by this action. *Held*, that the promise was
to be taken in the sense in which the promisor had reason to suppose
it was understood by the promisee; that the contract was ambiguous
and its meaning properly left to the jury, who were to fix the meaning
in the light of all the circumstances.

*U. S. Rubber Co.* v. *Silverstein*, 180 App. Div. 919, reversed.

(Argued May 5, 1920; decided June 1, 1920.)

APPEAL from a judgment entered October 30, 1917,
upon an order of the Appellate Division of the Supreme
Court in the fourth judicial department reversing a judg-

ment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Isaac Adler* for appellant. The evidence presented a question of fact for the jury as to whether the guaranty executed by defendant did or did not cover plaintiff's claim against Moses Silverstein. (*Gilhooley* v. *Burgard,* 225 N. Y. 445; *Scarlett* v. *Delaware, Lackawanna & Western R. R. Co.,* 222 N. Y. 159; *Cannon* v. *Fargo,* 222 N. Y. 331; *Conway* v. *Naylor,* 222 N. Y. 443; *Saltzsieder* v. *Saltzsieder,* 219 N. Y. 523; *Evansville Nat. Bank* v. *Kaufmann,* 93 N. Y. 273; *Clark* v. *Devoe,* 124 N. Y. 120; *Powers* v. *Clarke,* 127 N. Y. 417; *Richardson* v. *County of Steuben,* 226 N. Y. 13.)

*Oswald P. Backus, Jr.,* and *F. A. Watters* for respondent. The reasonable construction of the letter of guaranty in this case is that it refers only to one person and the name of Moses Silverstein not being mentioned therein, his name cannot be read or imagined into it, unless his name is found to be necessarily embraced therein. (*Gillet* v. *Bank of America,* 160 N. Y. 549; *Evansville National Bank* v. *Kaufmann,* 93 N. Y. 273; *Ringe* v. *Judson,* 24 N. Y. 70; *Gates* v. *McKee,* 13 N. Y. 232; *Dobbin* v. *Bradley,* 17 Wend. 422; *Bell* v. *Bruen,* 1 How. [U. S.] 169; *White* v. *Hoyt,* 73 N. Y. 505; *Walrath* v. *Thompson,* 4 Hill, 200; *Rochester City Bank* v. *Elwood,* 21 N. Y. 88; *Agawam Bank* v. *Stever,* 18 N. Y. 502.) There is no consideration for the guaranty as to Moses. (*Church* v. *Brown,* 21 N. Y. 315.)

Cardozo, J. A guaranty in the following form is the subject of this action:

"Rome, N. Y., Oct. 31, 1914.

"Dear Sirs.— Enclosed find check for the three above bills. Please do not send my statements and my son's

statements together.  Send him his and me mine.  They do business for themself (*sic*), and therefore send them separate statements, but I am good for what they buy.

" Yours truly,<br>" B. SILVERSTEIN."

The defendant, the signer of this guaranty, is a merchant in Rome, N. Y.  Two sons, Louis and Moses, are merchants in Oneida and Little Falls, respectively.  The former began business in April, 1914;  the latter in July. A salesman in the plaintiff's service visited the defendant in May of the same year.  The defendant then stated that he would be good for any sales that the plaintiff might make to Louis.  Moses, not being yet in business, was not included in the promise.  The plaintiff made sales to Louis, charging them at first to the defendant. It made sales later to Moses, charging them to him directly.  In October, 1914, the defendant, dissatisfied with the form of the accounts, wrote the letter already quoted.  The plaintiff interpreted this letter as a guaranty of sales to Moses, and gave credit on that basis.  Default in payment followed, and in turn was followed by this action.  The trial judge found the contract ambiguous, and left its meaning to the jury.  The Appellate Division reversed, and dismissed the complaint.

We find ourselves in accord with the ruling at the trial (*Utica City Nat. Bank* v. *Gunn*, 222 N. Y. 204, 208; *Evansville Nat. Bank* v. *Kaufmann*, 93 N. Y. 273, 281).  When the defendant undertook to be good for what " they " bought, it cannot be said, in exclusion of every other meaning, that he had in mind one person and one only.  Indeed, he concedes that he had more than one in mind, but he tries to make it appear that Louis had a partner, a daughter of the defendant, and that when he wrote in the plural, he was thinking of her. No one had ever heard of such a partnership before. A jury might not unreasonably hold it to be a fraudulent

pretense. The defendant, therefore, by his own admission and by the fair import of his words, had in mind some one besides Louis as covered by the guaranty. The circumstances of the family life and the family enterprises made the inference a fair one that if some other person was included, it could be no one else than the other son. Both sons were in business, and dealing with the plaintiff. Both must have been present to the father's mind as probable applicants for credit. He had given an oral promise to stand behind Louis when Louis was the only son in business. Now both sons were in business, and he was good for what " they " bought. We do not say that the words suggest this meaning to the exclusion of all others. It is possible that the use of the plural was a slip, though the defendant's explanation assumes it to have been deliberate. All these possibilities and others were put before the jury. It was because of their existence that the contract was ambiguous. The promise, if uncertain, was to be taken in the sense " in which the promisor had reason to suppose it was understood by the promisee " (*White* v. *Hoyt,* 73 N. Y. 505; *Powers* v. *Clarke,* 127 N. Y. 417, 424; *Moran* v. *Standard Oil Co.,* 211 N. Y. 187, 196). The jury were to fix the meaning in the light of all the circumstances. We cannot say that the meaning chosen is without basis in the evidence.

No question of the Statute of Frauds is in the case. That statute was neither urged nor pleaded. No question of the meaning of the promise " to be good for " purchases is here. The defendant's answer admits that the promise was a guaranty of payment. Some point is made that the guaranty was without consideration. Whether it was intended to induce credit, and whether credit was given on the faith of it, were questions of fact, which were disposed of by the jury.

We find no error in the rulings upon evidence. If there was any error in the charge, it is not, we think,

so substantial that it could have affected the result
(Code Civ. Pro. § 1317).

The judgment of the Appellate Division should be
reversed, and that of the Trial Term affirmed, with costs
in the Appellate Division and in this court.

HISCOCK, Ch. J., CHASE, HOGAN, McLAUGHLIN, CRANE
and ELKUS, JJ., concur.

Judgment reversed, etc.