JEANNE H. GOLD, Plaintiff, *v.* ABRAHAM SMITH, Defendant.

City Court of New York, Kings County, April 4, 1935.

*Hirsh, Newman, Reass & Becker* [by *Mr. Reass*], for the plaintiff.

*David Steckler*, for the defendant.

GALLAGHER, J.   This action is brought on a guaranty evidenced by a letter mailed by defendant to plaintiff's assignor, the Gilt Edge Razor Blade Company, reading as follows: " This letter is to the effect that I personally guarantee the account of Smith & Smith,

Inc., to the extent of two thousand ($2,000) dollars. (Signed) Abraham Smith."

Smith & Smith, Inc., the principal whose account was thus guaranteed, was at the time indebted to the promisee, the Gilt Edge Razor Blade Company, for blades already purchased and was seeking further deliveries of blades, which were being withheld because of this debt and the financial instability of the purchaser. Upon receipt of the guaranty, the blade company resumed deliveries and continued them beyond the point where their aggregate price added to the old debt exceeded $2,000, the amount of the guaranty. In the meantime the principal had resumed payments, and paid not only the old debt but also sums aggregating more than $2,000 for additional blades, using during this period, by mutual consent, to supplement the other payments, the whole of a security deposit it had previously given the blade company. Subsequently the principal fell behind in its payments and eventually failed in business owing the blade company a debt for blades in excess of the amount of the guaranty which has not been paid to date and which furnishes the basis of this action.

What has been said about the facts, as to which there can be no serious dispute, makes it self-evident that the guaranty was given to induce a resumption of deliveries and an extension of credit by the blade company, and hence by fair implication the guaranty states the consideration and meets the requirements of the Statute of Frauds in this respect (*Sun Oil Co.* v. *Heller*, 248 N. Y. 28; *Standard Oil Co.* v. *Koch*, 260 id. 150, 153) and in all other respects as well. Notwithstanding its brevity and informality it completely and accurately evidences the agreement the parties actually made.

The triable issues of fact which the Appellate Division stated were present in this case when it reversed a summary judgment heretofore obtained by plaintiff for the amount of the guaranty were indicated by the court to depend for their solution upon the determination of the intention of the parties which was rendered uncertain by the use of the word " account " in the guaranty (242 App. Div. 643; Id. 777).

On the word of that court we thus have it that the writing is fairly open to different constructions and nothing else is requisite for the application of the rule that a writing, albeit a guaranty, must be interpreted most strongly against the person whose choice of words is responsible for its ambiguity. (*McShane Co.* v. *Padian*, 142 N. Y. 207, 210; *Gates* v. *McKee*, 13 id. 232.)

Defendant's promise, therefore, must not only be construed most strongly against him but must be taken in the sense in which he

had reason to suppose it was understood by the blade company (*U. S. Rubber Co.* v. *Silverstein*, 229 N. Y. 168.) Under this rule of construction and on the authority of *McShane Co.* v. *Padian* (*supra*) it could be urged with considerable potency, except for the ruling of the Appellate Division, that the guaranty is ambiguous, which is the law of this case, that defendant is liable on the guaranty as it stands. Under the decision in the *McShane Company* case it may be doubted that defendant was entitled to resort to parol evidence to explain what he meant by the writing, since parol evidence could have for its sole purpose, so far as he was concerned, the tacking on of the condition or limitation which defendant now says he had in mind at the time. Obviously, if he had it in mind, his failure to incorporate it in the writing when he was selecting his words and placing them on a business letterhead which he decapitated for the purpose, cannot be laid to inadvertence or mistake, which sometimes is taken as a basis for permitting the introduction of parol evidence to interpret a writing. The average person, unaided by parol interpretation or rules of construction, would construe defendant's promise to mean that he guaranteed payment of any debit balances in the account which his principal was running with the blade company and failed to pay, not to exceed $2,000. Such seems to be the effect of the ruling in the *McShane Company* case. There the guarantor promised to pay any balance up to $500 for goods purchased by his principal from the promisee and it was unanimously held and as matter of law that the guaranty was a continuing one which "by its terms limits defendant's liability to any balance not exceeding Five Hundred Dollars which may become due, but does not undertake to regulate the amount of * * * [the principal's] future transactions with the plaintiff [the promisee]."

Defendant having received for his promise a consideration which is sufficiently set forth in the writing, the question arises whether the consideration was exhausted when the principal paid the promisee the back debt and more than $2,000 additional. The answer to this question has been indicated already. It depends upon whether the parties intended the guaranty to be a temporary one, applicable only to the order or contract then in process of being filled by the blade company for the principal, or whether it was intended to be a continuing guaranty applicable to any debit charges in the principal's account with the blade company, to the extent of $2,000, without reference to when or under what orders or contracts the debits were incurred. As already shown, defendant must be deemed to have intended a continuing guaranty. In and of itself the word "account" connotes no limitation of time or

circumstances whatever nor does the writing taken as a whole import any condition or limitation except that defendant's liability shall not exceed $2,000.

As to the alleged revocation of the guaranty, the evidence shows that at no time while the consideration for defendant's promise was executory did he inform the promisee of any intended limitation of his liability or attempt to withdraw, revoke, modify or limit the guaranty in any way, not even when the promisee attempted to get from him a more formal document, which defendant refused. This refusal was not sufficient to put the promisee on notice that defendant meant to thus limit the scope of the guaranty nor did it in fact have that effect. The refusal, on defendant's own showing, was not put upon any such basis, and the subsequent course of conduct of all the parties concerned, without considering the testimony, confirms this conclusion. Fortuitous circumstances shown by arithmetical computation to be present in this case have little probative value in determining whether the parties intended the guaranty to be temporary or continuing. For example, the circumstance that the security when applied to the old debt and new deliveries would satisfy all indebtedness except about $2,000, provided deliveries stopped when the subsisting order or contract was filled, has no special significance. The argument which stresses the circumstance overlooks the fact that the principal had the option of calling for a duplication of the order. If the option had been exercised the figures would lose all significance. If such circumstances were in the mind of defendant when negotiations for the guaranty were in progress he refrained then and later from giving expression to them, written or oral, and at no time mentioned them when the mentioning would have meant something. It appears reasonably certain that defendant gave them no thought until after this action was begun. On the whole it is reasonably clear from the evidence and the course of conduct of all parties concerned that the intention of the parties was that the guaranty was to be applicable to all blades purchased by the principal and charged to its account to the extent of $2,000 regardless of the time of the purchases or the kind of orders or contracts under which they were made.

Many intriguing questions of law and fact are discussed in the voluminous briefs submitted by counsel. Not infrequently they draw opposite inferences from the same circumstance or set of circumstances and cite the same decisions in support of their respective contentions, all of which tends to show that it is difficult to agree upon what the controlling decisions are in this type of case.

After reading the authorities cited and other decisions, the court

is not aware of the existence of any controlling authority at variance with any of the conclusions here reached and on the contrary finds ample support for all of them in the decisions above mentioned.

The court finds in favor of plaintiff for the amount of guaranty, with interest. Defendant is granted an exception, ten days' stay and thirty days to make a case. A jury and findings having been waived, judgment may be entered accordingly.